The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Mack Willie THOMAS, Defendant–Appellant.

No. 92SA495.

Supreme Court of Colorado,
En Banc.

Jan. 31, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jeanne Winer, Boulder, for defendant-appellant.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellant Mack Willie Thomas was convicted of two counts of sexual assault on a child [1] on August 26, 1986. On appeal, the court of appeals vacated the convictions and remanded the case for further proceedings with respect to the admissibility of hearsay evidence from two child witnesses. *People v. Thomas,* 770 P.2d 1324 (Colo.App.1988). On certiorari review, we reversed the court of appeals' judgment and reinstated the convictions. *Thomas v. People,* 803 P.2d 144 (Colo. 1990).

On September 27, 1991, Thomas filed a Crim.P. 35(c) motion to vacate his convictions on the ground of ineffective assistance of counsel—an issue not raised in his earlier appeal. The trial court denied the motion on the ground that section 16–5–402(3), 8A C.R.S. (1986), prohibited the filing thereof.[2] Having transferred this appeal to this court from the court of appeals pursuant to section 13–4–102(1)(b) and 13–4–110(1)(a), 6A C.R.S. (1987), to review the propriety of the trial court's ruling,[3] we reverse and remand the

1. § 18–3–405, 8B C.R.S. (1986).

2. The issue of whether Thomas' Crim.P. 35 motion was time-barred by § 16–5–402(1) was not raised by the People or by the trial court in this case. *See People v. Lanford,* 867 P.2d 50 (Colo. App.1993) (trial court may raise question of applicability of § 16–5–402(1) *sua sponte,* but must permit defendant an opportunity to show justifiable excuse or excusable neglect). *See also People v. Hampton,* 857 P.2d 441 (Colo.App.1992), *cert. granted,* No. 93SC77 (Colo. Sept. 7, 1993) (the limitations period established by § 16–5–

402(1) does not commence until mandate issues at the conclusion of the appellate process if the judgment of conviction is appealed).

3. This appeal was originally filed with the Colorado Court of Appeals but was transferred to this court because the constitutionality of a statute is in question. *See* § 13–4–102(1)(b), 6A C.R.S. (1987). Section 13–4–102(1)(b) was subsequently amended, effective July 1, 1992, to narrow the applicable exception to the court of appeals' jurisdiction to cases in which a statute has been declared unconstitutional. Ch. 56, sec. 1, § 13–

case with directions to the trial court to conduct further proceedings.

## I

In May of 1986, some three and one-half months prior to the commencement of trial in this case, Thomas was convicted of a separate and unrelated charge of sexual assault on a child. Although affirmed on direct appeal, *People v. Thomas*, No. 86CA1007 (Colo. App. May 25, 1989) (not selected for official publication), *cert. denied*, No. 89SC396 (Colo. Sept. 18, 1989), the judgment of conviction in that case was ultimately vacated when, at the conclusion of a Crim.P. 35(c) proceeding, the trial court determined that Thomas' constitutional right to effective assistance of counsel had been violated.[4] The prosecution elected not to re-file that case.

On August 20, 1992, in the instant case, Thomas filed a motion for new trial or reduction of sentence, pursuant to Crim.P. 35(b). He subsequently filed a motion for new trial pursuant to Crim.P. 35(c), asserting, *inter alia*, a denial of his right to effective assistance of counsel. In an affidavit filed in support of his Crim.P. 35(c) motion, Thomas avers that although he informed his trial attorney that he, Thomas, desired to testify at trial, he did not do so because of the probability that his credibility would be impeached by reference to the prior conviction. He also avers that his trial attorney advised Thomas that he "had a strong case of ineffective assistance of counsel" with respect to the prior conviction; that Thomas questioned how the "bad" conviction could be used against him, especially when the prior case was on appeal; and that the attorney re-

sponded to these inquiries by stating that the prosecutor "would use it to impeach [Thomas]." Thomas' trial attorney did not attempt to suppress the prior conviction.

The trial court denied Thomas' Crim.P. 35(c) motion without conducting an evidentiary hearing on the merits thereof.[5] The trial court initially held that the provisions of section 16–5–402(3) prohibited consideration of the motion. Alternatively, the trial court ruled that the decision of Thomas' trial attorney to refrain from filing a motion to suppress the prior conviction represented a strategic decision and did not constitute ineffective assistance of counsel. Thomas appealed, asserting that the provisions of section 16–5–402(3) were not applicable to his Crim.P. 35(c) motion; that if the statute did govern, it violated several federal and Colorado constitutional principles on its face and as applied; and that Thomas was entitled to an evidentiary hearing on his motion.

## II

Section 16–5–402, 8A C.R.S. (1986), contains the following pertinent provisions:

**Limitation for collateral attack upon trial judgment.** (1) Except as otherwise provided in subsection (2) of this section, no person who has been convicted under a criminal statute of this or any other state of the United States shall collaterally attack the validity of that conviction unless such attack is commenced within the applicable time period, as provided in this subsection (1), following the date of said conviction:

All class 1 felonies: No limit

---

4–102(1)(b), 1992 Colo.Sess.Laws 271. Our jurisdiction in this case is governed by the former statute. After our decisions in *People v. Wiedemer*, 852 P.2d 424 (Colo.1993), and *People v. Heitzman*, 852 P.2d 443 (Colo.1993), this appeal was returned to the court of appeals. Upon Thomas' motion to reconsider, we ordered the case transferred back to this court.

**4.** Thomas has been represented by several attorneys in these two cases. In the first case, he was initially represented by an attorney who withdrew prior to the commencement of the trial. Another attorney represented Thomas during the trial of the first case; that attorney subsequently moved to withdraw, claiming that Thomas was

uncooperative. On June 13, 1986, the court appointed a third attorney to represent Thomas in the trial of the present case. On appeal, Thomas was represented by the Office of the State Public Defender, which office also filed a Crim.P. 35(b) motion on behalf of Thomas. Thomas subsequently retained a fifth attorney to pursue Crim.P. 35(c) relief. After filing a notice of appeal from the denial of the Crim.P. 35(c) motion, that attorney withdrew and a sixth attorney ultimately was appointed to represent Thomas.

**5.** The order also denied Thomas' request for relief pursuant to Crim.P. 35(b). The propriety of that ruling is not before us.

All other felonies: Three years

. . . .

(2) In recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders, the only exceptions to the time limitations specified in subsection (1) of this section shall be:

(a) A case ·in which the court entering judgment of conviction did not have jurisdiction over the subject matter of the alleged offense;

(b) A case in which the court entering judgment of conviction did not have jurisdiction over the person of the defendant;

(c) Where the court hearing the collateral attack finds by a preponderance of the evidence that the failure to seek relief within the applicable time period was caused by an adjudication of incompetence or by commitment of the defendant to an institution for treatment as a mentally ill person; or

(d) Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect.

(3) If the judgment of conviction to which any collateral attack is directed was sustained upon review by a court of appellate jurisdiction in the state where the judgment was entered, no collateral attack on such judgment shall be permitted whether commenced within or outside the time limitations set forth in subsection (1) of this section, unless said collateral attack is based upon an opinion of the court of last resort subsequently announced in the state where the judgment was entered, which opinion is given retroactive effect in a manner invalidating the conviction.

§ 16–5–402, 8A C.R.S. (1986). The General Assembly has thus determined the availability of collateral attacks with respect to two classes of criminal cases. Sections 16–5–402(1) and (2) establish a time limit within which collateral attacks may be asserted in cases where no appeal has been taken or no final decision of an appeal has been rendered. Section 16–5–402(3) addresses criminal cases which have been unsuccessfully appealed and prohibits any collateral attack of a conviction affirmed on appeal unless the conviction is no longer valid because of a retroactively applicable appellate decision in the state in which the conviction was obtained.[6]

▮▮▮▮ When construing statutory provisions, our responsibility is to effectuate the intent of the General Assembly. *E.g., Homestake Enters., Inc. v. Oliver*, 817 P.2d 979, 981–82 (Colo.1991); *Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527, 530 (Colo.1991). When the statutory language itself does not readily reveal that intent, certain principles of statutory construction guide us. When possible, statutes are to be construed in such manner as to avoid questions of their constitutional validity. *Perry Park Water & Sanitation Dist. v. Cordillera Corp.*, 818 P.2d 728, 732 (Colo.1991); *People v. Lybarger*, 700 P.2d 910, 915 (Colo.1985). However, we must give full effect to the language used by the General Assembly even if to do so results in a determination that the statute violates constitutional criteria. *People v. New Horizons, Inc.*, 200 Colo. 377, 383, 616 P.2d 106, 110 (1980).

In *People v. Germany*, 674 P.2d 345, 351–54 (Colo.1983), we held that the predecessor of current section 16–5–402(1) violated constitutional guarantees of due process of law by prohibiting the filing of collateral attacks on judgments of conviction outside the statutorily specified time limits even if the failure to act within those limits resulted from justifiable excuse or excusable neglect. The General Assembly subsequently amended section 16–5–402(2) to permit collateral attacks outside the statutory limitations periods provided by section 16–5–402(1) when the delay resulted from justifiable excuse or excusable neglect. Ch. 117, sec. 1, § 16–5–402(2)(d), 1984 Sess.Laws 486, 486. Although in *Germany* we were not required to consider the constitutionality of section 16–5–402(3), we did comment on this section as follows:

---

6. Presumably a defendant may rely upon a decision by a court of another state in a post-conviction proceeding that invalidates a conviction on an issue not addressed in the primary appeal.

It necessarily follows that if a "court of last resort" does not expressly decide the retroactive application of a newly promulgated constitutional rule, subsection (3) would prohibit the defendant from collaterally challenging a prior conviction even though his challenge is based upon a colorable claim that the new rule is such that retroactive application is constitutionally mandated.

*Id.* at 353 (footnote omitted). We also observed that the provisions of subsection (3) imposed even greater limitations on collateral attacks than the provisions of subsections (1) and (2). *Id.* at 351. While noting the state's legitimate interest in the finality of convictions, we emphasized the importance of assuring that defendants are afforded meaningful opportunities to challenge allegedly unconstitutional convictions. *Id.* at 349–50.[7]

In establishing time frames within which such issues must be raised, the General Assembly recognized the importance of upholding the finality of judgments and furthering the policies embodied in enhanced penalty legislation directed at recidivists. § 16–5–402(2), 8A C.R.S. (1986); *People v. Wiedemer*, 852 P.2d 424, 436 (Colo.1993). As amended, sections 16–5–402(1) and –402(2) also recognize the necessity of affording persons the right to post-conviction judicial consideration of constitutional issues allegedly affecting the validity of judgments of conviction. However, section 16–5–402(3) for all practical purposes eliminates the ability of a person who has appealed a conviction to challenge its constitutionality even though no court has considered the constitutional issue raised.

An examination of the structure and language of section 16–5–402 compels the conclusion that the statute achieves this draconian result. Section 16–5–402(1) limits the time in which a person convicted under a criminal statute of this or any other state may bring a collateral attack of that conviction.[8] Section 16–5–402(2)(d), as amended subsequent to our decision in *Germany*, 674 P.2d 345, provides an exception to these time limitations if a convicted person's failure to collaterally challenge the constitutionality of a conviction within the limitations period was the result of circumstances amounting to justifiable excuse or excusable neglect. Section 16–5–402(2) expressly limits this exception to the time period provisions established by section 16–5–402(1).

■ Section 16–5–402(3) contains no limitations period. The only exception to its complete ban of post-conviction collateral attacks in cases that have been appealed is the proviso that such attacks may be permitted if a "court of last resort" in the state where the judgment was entered announces a retroactively effective decision that would invalidate the conviction. § 16–5–402(3). *See* § 18–1–410(f), 8B C.R.S. (1986), and Crim.P. 35(c)(1) (authorizing post-conviction relief on the grounds of a significant, retroactively appli-

7. It is arguable that in noting at length that § 16–5–402(3) contained even more severe restrictions on the ability of persons to challenge the constitutionality of their convictions than did the provisions of § 16–5–402(1) held violative of due process protections, we also determined in *Germany* that the entire statute, including § 16–5–402(3), violated due process criteria. Under that view of *Germany*, because of the identical language retained in § 16–5–402(3), as adopted by the General Assembly, *see* ch. 117, sec. 1, § 16–5–402, 1984 Colo.Sess.Laws 486, 486, remains unconstitutional.

8. We have recognized that the American Bar Association Standards for Criminal Justice, Standard 22–2.4(a), provides "A specific time period as a statute of limitations to bar post-conviction review of criminal convictions is unsound." *See Wiedemer*, 852 P.2d at 441 n. 17 (citing this standard). The commentary to this Standard provides as follows:

Almost any fixed period of time that might be selected as the cutoff point for consideration of the merits of a postconviction claim is likely to prove unworkable. A period of less than five years needs exceptions to deal with the manifold differences in the situations of prisoners. A short statute of limitations interferes with the retroactive application of those changes in law that are to be given such effect. Where claims under the United States Constitution are involved, the limitations statute prevents state courts from adjudicating the issues and precipitates the invocation of federal habeas corpus jurisdiction. A period long enough to avoid these kinds of difficulties is likely to have meaning only in barring the most stale claims. The Uniform Post–Conviction Procedure Act contains no period of limitations. IV ABA Standards for Criminal Justice, § 22–2.4(a) at 22–26 (2d ed. 1986).

cable change in the law only while the appeal is pending). The statute refers only to criminal cases and proceedings, not to issues. Thus, for purposes of section 16–5–402(3), all post-conviction remedies, including habeas corpus actions as well as Crim.P. 35(c) proceedings, are barred without regard to the particular issues raised or not raised in the initial appeal. As we indicated in *Germany,* the provisions of section 16–5–402(3) are unduly restrictive. The People suggest that section 16–5–402(3) may be construed to incorporate the justifiable excuse or excusable neglect standard established by section 16–5–402(2)(d). Such construction not only strains the text of section 16–5–402(3) beyond tolerable limits, but ignores the specific language of section 16–5–402(2) limiting the applicability of section 16–5–402(2)(d) to the limitations period established in section 16–5–402(1). Courts may not assume a legislative intent which would vary the words used by the General Assembly. *Jones v. People,* 155 Colo. 148, 154, 393 P.2d 366, 369 (1964). Furthermore, as previously noted, the difficulties created by section 16–5–402(3) involve consideration of particular issues in cases, not simply cases or proceedings in general. The statute addresses questions of cases and procedures.

The People also suggest that the provisions of section 16–5–402(3) might be harmonized with the provisions of section 18–1–410. However, in *People v. Heitzman,* 852 P.2d 443 (Colo.1993), we concluded that these statutes conflict and that, as the more recently adopted legislation, section 16–5–402(3) prevails. *Id.* at 446–47. We adhere to that view.

■ Thomas asserts that the statute does not apply to him because his Crim.P. 35(c) motion does not constitute a collateral attack. We rejected identical arguments in *Wiedemer,* 852 P.2d at 430, and in *Heitzman,* 852 P.2d at 466.[9]

As applicable to Thomas, section 16–5–402(3) prevents any consideration of his claim of constitutionally ineffective assistance of counsel because he unsuccessfully appealed his conviction. However, questions of ineffective assistance of trial counsel may well not become apparent until after the appellate process is concluded, most particularly when trial counsel serves as counsel on appeal. Section 16–5–402(3) also extends to cases otherwise subject to reconsideration on the basis of newly discovered evidence. *See* Crim.P. 35(c)(2)(V).

The People argue in the alternative that section 16–5–402(3) should be construed to permit post-conviction collateral review of convictions affirmed on appeal if the constitutional issue asserted could not reasonably have been raised in the earlier appeal. Such construction, it is contended, would harmonize the provisions of sections 16–5–402(3) and 18–1–410. The language of section 16–5–402(3) does not permit such refinement, however. Furthermore, as the People recognize, this proposed construction would in all probability prohibit Thomas and others similarly situated from pursuing claims of ineffective assistance of trial counsel if they were represented by separate counsel on appeal.

■ In view of the language of section 16–5–402(3) and our conclusion that it applies to Thomas, we address Thomas' arguments that the statute violates federal and state constitutional provisions. Thomas challenges the constitutionality of section 16–5–402(3) on three grounds: that the statute violates the due process guarantees of the federal and state constitutions; that it effects an unconstitutional suspension of the writ of habeas corpus; and that the statute violates the separation of powers doctrine. We agree with his first argument, and therefore need not address the other two issues.

While it has been suggested that the Due Process Clause of the federal constitution guarantees neither the right to appeal a judgment of conviction, *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (plurality opinion), nor the right to

9. In *Wiedemer,* we suggested that the time limitations of § 16–5–402(1) do not conflict with, but merely supplement, the provisions of § 18–1–410. *Wiedemer,* 852 P.2d at 432.

However, in *Heitzman,* we recognized that the provisions of § 16–5–402(3) prohibiting post-conviction remedies in cases which have been affirmed on appeal did conflict with § 18–1–410. *Heitzman,* 852 P.2d at 446.

seek post-conviction relief, *United States v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 2090, 48 L.Ed.2d 666 (1976) (plurality opinion), *but see* Colo. Const. Art. VI, sec. 2(2) (providing a right to appeal all final state court trial judgments), all states and the federal government have provided rights to appeal criminal convictions and to pursue post-conviction relief. Whether by writ of habeas corpus, coram nobis, statute or court rule, every state provides a mechanism to challenge convictions on constitutional grounds, unhindered by the procedural obstacles created by the ancient forms of the common law writs.[10]

While many, if not most, constitutional claims which could be brought in a Crim.P. 35(c) motion could also be brought in a direct appeal, this court has expressed a preference for having ineffective assistance of counsel claims brought in Crim.P. 35(c) proceedings. *Cummings v. People,* 785 P.2d 920, 927–28 (Colo.1990) (Vollack, J., concurring in part and dissenting in part); *Stone v. People,* 174 Colo. 504, 512, 485 P.2d 495, 498–99 (1971). Such procedure promotes judicial economy because the conviction may be overturned in the course of the direct appeal. Furthermore, in the context of ineffective assistance of counsel claims, a trial court is positioned to hear and evaluate evidence as necessary. *See Cummings,* 785 P.2d at 925. In cases where the ineffective assistance of counsel claim can purportedly be shown on the record, a proper record on appeal may still require explanations by trial counsel about alleged incompetent acts or omissions, or expert testimony as to the requisite standard of care in the applicable legal community.

Section 16–5–402(3) in effect would preclude claims for ineffective assistance of appellate counsel, as well as claims that either trial counsel or appellate counsel was ineffective because he or she failed on appeal to raise questions about the adequacy of trial counsel representation. By barring such constitutional challenges to convictions simply because the case has been appealed, section 16–5–402(3) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Due Process Clause of Article II, Section 25, of the Colorado Constitution.[11] Of all persons convicted of crimes in this or any other state, only those who asserted their rights to appeal would be denied the right to challenge an unconstitutional conviction, whether on grounds of newly discovered evidence, the trial court's lack of jurisdiction, or ineffective assistance of counsel. Such deprivation of any ability to challenge the constitutional validity of a conviction denies fundamental fairness to persons convicted of criminal offenses, in violation of the Due Process Clauses of the Fourteenth Amendment to United States Constitution and of Article II, Section 25, of the Colorado Constitution.[12]

### III

■ The trial court concluded that if Thomas is entitled to consideration of his Crim.P. 35(c) motion, his claim of ineffective assistance of counsel should be denied on the basis of the pleadings and the supporting affidavit. Thomas contends that the trial court erred in failing to afford him an evidentiary hearing prior to ruling on his motion. We agree with Thomas' argument in the circumstances of this case.[13]

Under both the fourteenth amendment to the United States Constitution and article II, section 25 of the Colorado Constitu-

---

10. *See* Donald E. Wilkes, Jr., *Federal and State Postconviction Remedies and Relief* 214–220 (1983).

11. We have not been directed to legislation in any other state that completely denies post-conviction relief to defendants whose convictions were affirmed on appeal. Thomas suggests that § 16–5–402(3) may be construed to apply only to out-of-state convictions. The language and structure of the statute in its entirety preclude such a construction, however.

12. While we hold that § 16–5–402(3) violates due process, we reiterate our conclusions in *Wiedemer,* 852 P.2d at 435–38, and *Heitzman,* 852 P.2d at 447, that §§ 16–5–402(1) and 16–5–402(2) are constitutional, and are severable from § 16–5–402(3).

13. We neither hold nor imply that every person filing a Crim.P. 35(c) motion to set aside a judgment of conviction on the ground of ineffective assistance of counsel is entitled to an evidentiary hearing.

tion, a criminally accused has a due process right to testify in his own defense. *E.g., Faretta v. California,* 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (1975); *Brooks v. Tennessee,* 406 U.S. 605 [92 S.Ct. 1891, 32 L.Ed.2d 358] (1972); *People v. Curtis,* 681 P.2d 504 (Colo.1984); *People v. Myrick,* 638 P.2d 34 (Colo.1981). This right is fundamental, and the opportunity to decide to exercise it freely and without coercive influence is critical to the fairness of the trial itself. *Curtis,* 681 P.2d at 513–15.

*Apodaca v. People,* 712 P.2d 467, 472 (Colo. 1985). In *Curtis,* we emphasized that the defendant's personal participation in the trial process is of value in "legitimat[ing] the outcome of the trial." *Curtis,* 681 P.2d at 514. We explained our holding there as follows:

> Because of the special evidentiary nature of the defendant's testimony, the importance of allowing the defendant to have his say *regardless of its effect on the chances of acquittal,* and the legitimacy that this opportunity confers upon the outcome of criminal proceedings, we hold that the constitutional right to testify is so fundamental that procedural safeguards are necessary to ensure that the defendant understands the significance of waiver of this right.

*Id.* (emphasis added). A defendant's decision to exercise or waive the right to testify is undeniably a major facet of all criminal proceedings.

In this case the trial judge determined, in the absence of an evidentiary hearing, that the failure of Thomas' trial attorney to seek suppression of the prior conviction was a strategic decision that did not constitute unreasonable professional conduct.[14] In view of Thomas' averments and the totality of the circumstances surrounding both criminal proceedings, we conclude that the record does not support such conclusion.

In *People v. Goff,* 187 Colo. 57, 530 P.2d 512 (1974), and *People v. Johnson,* 192 Colo. 483, 560 P.2d 465 (1977), we held that a conviction could be used to impeach credibility when a motion for new trial was denied by the trial court. *See also People v. Jacquez,* 196 Colo. 569, 572, 588 P.2d 871, 873–74 (1979) (conviction for purposes of habitual criminal statute effective as of the date judgment of conviction entered by the trial court, including sentence imposed). Thus, the prior judgment of conviction could have been used to impeach Thomas had he taken the stand. The record before us indicates that the motion of Thomas' trial attorney to withdraw in this case occurred prior to sentencing.

Thomas asserted that he would present evidence that his attorney's failure to move to suppress the prior conviction was below the requisite standard of care of a criminal

---

14. The trial court at no time suggested that as a matter of law Thomas' allegations failed to establish the prejudice prong of the *Strickland* test. *Strickland v. Washington,* 466 U.S. 668, 687, 691–96, 104 S.Ct. 2052, 2064, 2066–69, 80 L.Ed.2d 674 (1984). The trial court did acknowledge that if it found that the trial attorney's conduct "was unreasonable, then it must consider whether there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." However, the trial court did not address the issue of prejudice because it found the trial attorney's conduct to constitute a reasonable tactical decision. The following statements constitute the entirety of the trial court's conclusions:

> After a review of the motion, record, file and affidavit submitted by the defendant it is clear that trial counsel was aware of the infirmities in the prior conviction. With this knowledge and after discussing it with the defendant, counsel made the strategical decision not to collaterally attack the defendant's prior conviction. Pursuant to *Steward, Swainson, Moody,*

> *Shook, Barnes, Martinez, Rivers* and *Dennis,* strategical decisions are to be made by trial counsel and the defendant's disagreement as to whether counsel made the appropriate strategical decision does not constitute ineffective assistance of counsel.

> Pursuant to *White* and *Strickland,* and after a thorough examination of the motion, record and file, this court finds that the defendant's allegations are clearly without merit; the decision not to collaterally attack the defendant's prior conviction was strategical.

> Additionally, pursuant to *Robinson* and its holding in regard to the application of Section 16–5–402, the defendant's request for an evidentiary hearing or any postconviction relief is denied. Notwithstanding the effect of *Robinson* and Section 16–5–402, this court finds for all reasons previously stated, that the defendant's numerous other assertions as to why he should be granted a new trial or an evidentiary hearing, are clearly without merit and thus his request for a hearing or postconviction relief is denied.

attorney in the requisite legal community. Thomas avers that his attorney never discussed the possibility of obtaining an order suppressing his prior conviction. In these circumstances, we conclude that Thomas is entitled to the evidentiary hearing he requested to permit a full evaluation of his claim of ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984); *Cummings v. People,* 785 P.2d 920, 925 (Colo.1990).

## IV

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded to that court with directions to conduct an evidentiary hearing to determine the merits of Thomas' claim that the representation afforded him at trial was constitutionally deficient.

ERICKSON, J., dissents, and ROVIRA, C.J., and VOLLACK, J., join in the dissent.

VOLLACK, J., dissents, and ROVIRA, C.J., and ERICKSON, J., join in the dissent.

Justice ERICKSON dissenting:

Although I agree with substantially all of Justice Vollack's dissent, I write separately to emphasize that the posture of this case does not require us to address the constitutionality of section 16–5–402(3), 8A C.R.S. (1986), or to remand for a further hearing.

The majority acknowledges that when possible, a statute is to be construed to avoid questions concerning the statute's constitutional validity. Maj. op. at 883 (citing *Perry Park Water & Sanitation Dist. v. Cordillera Corp.,* 818 P.2d 728, 732 (Colo.1991); *People v. Lybarger,* 700 P.2d 910, 915 (Colo.1985)). The majority holds that the *only* reasonable interpretation of section 16–5–402(3) is that it is a "draconian" bar to post-conviction relief that "for all practical purposes eliminates the ability of a person who has appealed a conviction to challenge its constitutionality even though no court has considered the constitutional issue raised." Maj. op. at 884.

I believe that the majority's interpretation is overbroad and unnecessarily results in a holding that section 16–5–402(3) is unconstitutional. In my view, a reasonable construction of Colorado's statutes relating to post-conviction relief, and the facts in this case, provide a sound basis for not addressing the constitutionality of section 16–5–402(3) and denying a further hearing. Therefore, I dissent.

## I

The General Assembly originally provided for post-conviction relief by enacting section 18–1–410, 8B C.R.S. (1986), which states in pertinent part:

**Postconviction remedy.** (1) Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review. An application for postconviction review must, in good faith, allege one or more of the following grounds to justify a hearing thereon:

(a) That the conviction was obtained or sentence imposed in violation of the constitution or laws of the United States or the constitution or laws of this state;

(b) That the applicant was convicted under a statute that is in violation of the constitution of the United States or the constitution of this state, or that the conduct for which the applicant was prosecuted is constitutionally protected;

(c) That the court rendering judgment was without jurisdiction over the person of the applicant or the subject matter;

(d) That the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;

(e) That there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned of by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation

of the conviction or sentence in the interest of justice;

(f)(I) That there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard.

To avoid litigation of stale claims, and to prevent relitigation of issues that were, or should have been resolved in defendant's initial appeal, the General Assembly subsequently enacted section 16–5–402(3), 8A C.R.S. (1986), which provides:

(3) If the judgment of conviction to which any collateral attack is directed was sustained upon review by a court of appellate jurisdiction in the state where the judgment was entered, no collateral attack on such judgment shall by permitted whether commenced within or outside the time limitations set forth in subsection (1) of this section, unless said collateral attack is based upon an opinion of the court of last resort subsequently announced in the state where the judgment was entered, which opinion is given retroactive effect in a manner invalidating the conviction.

The intent of the General Assembly is clear when the two post-conviction-remedy statutes are construed together.[1] Post-conviction remedies that are available in a defendant's initial appeal are barred, but post-conviction remedies that are not reasonably available in an initial appeal can be asserted within the limitations imposed by section 16–5–402.

This interpretation of the statute allows section 16–5–402 to be construed in harmony with section 18–1–410. *See Riley v. People,* 828 P.2d 254, 257 (Colo.1992) (stating statutes should be construed in harmony with each other). In addition, the construction avoids questions of constitutional invalidity.

*See People v. Loomis,* 698 P.2d 1320 (Colo. 1985) (holding that if possible, a statute should be construed in such a way as to find in constitutional).

The General Assembly first enacted section 18–1–410 to provide a mechanism for defendants to challenge allegedly unconstitutional convictions. Subsequently, the General Assembly recognized the importance of upholding the finality of judgments and enacted limitations on collateral relief. *See* maj. op. at 884; *People v. Wiedemer,* 852 P.2d 424, 436 (Colo.1993). In my view, subsection (3) should be construed in light of the General Assembly's intent to facilitate the goal of upholding the finality of judgments. *See, e.g., Homestake Enters., Inc. v. Oliver,* 817 P.2d 979, 981–82 (Colo.1991). In addition, the subsection should be interpreted in order to give it force and effect. *Saxton v. Perry,* 47 Colo. 263, 107 P. 281 (1910). Thus, the most reasonable construction of section 16–5–402(3) is that it was enacted to uphold the finality of a judgment by requiring a defendant to raise post-conviction challenges in his initial appeal.

## II

The facts in this case demonstrate a pattern of conduct and issues that should have been addressed in Thomas' initial appeal. The defendant has been convicted of a number of crimes premised on the sexual assault of children. In *Thomas v. People,* 803 P.2d 144 (Colo.1990), on direct review, we reversed the court of appeals decision in *People v. Thomas,* 770 P.2d 1324 (Colo.App.1988), and ordered reinstatement of Thomas' conviction for sexual assault on a neighbor's child and on his own daughter.

Subsequently, Thomas attempted to collaterally attack his conviction. Thomas peti-

---

1. In *People v. Heitzman,* 852 P.2d 443, 447 (Colo. 1993), we stated: "We are also satisfied that subsection (3) has no application to this proceeding. The defendant's conviction was never appealed and therefore was never sustained by a court of appellate jurisdiction.... Because the defendant has not asserted that he is affected by the alleged constitutional defect of subsection (3), we conclude that he lacks standing to raise this argument as a challenge to the constitutionality of section 16–5–402." Despite this holding, this court addressed whether 18–1–410(1) and 16–5–402(3) are in irreconcilable conflict. The brief, facial analysis of the two statutes only establishes that section 18–1–410 was not applicable in that case because any conflict between section 18–1–410 and section 16–5–402 would result in section 16–5–402 being applied. Any further extension of this dicta would be in direct contravention to the holding in *Heitzman* that section (3) is severable from the rest of the statute and was not applicable in that case.

tioned for habeas corpus in the federal court. The petition was denied in both the trial court and on appeal. *Thomas v. Gunter,* 962 F.2d 1477 (10th Cir.1992). He also has petitioned for post-conviction relief pursuant to Crim.P. 35(c) on a claim of ineffective assistance of counsel. The claim of ineffective assistance of counsel is predicated on defense counsel's failure to have the defendant's earlier conviction of sexual assault on another child suppressed.[2] Thomas did not raise the claim of ineffective assistance of counsel in his initial appeal. The Crim.P. 35(c) motion based on ineffective assistance of counsel was denied on the merits and because of the time limitations imposed by section 16–5–402, 8A C.R.S. (1986). This appeal followed. The record reflects that the defendant has had numerous lawyers—some were discharged, one withdrew, and one continues to represent the defendant. The lawyer that tried the sexual assault case before the court was not the same lawyer that handled the defendant's appeal.[3] In my view, Thomas should have raised the ineffective assistance of counsel claim in his initial appeal if grounds existed for such a claim when he appealed.

I would not grant further review and do not agree that section 16–5–402(3) is unconstitutional.

Accordingly, I dissent.

I am authorized to say that Chief Justice ROVIRA and Justice VOLLACK join in this dissent.

Justice VOLLACK dissenting:

The majority reverses the judgment of the district court and remands the case with directions to conduct an evidentiary hearing on Mack Willie Thomas' Rule 35(c) claim of ineffective assistance of counsel. The majority holds that section 16–5–402(3), 8A C.R.S. (1986), is unconstitutional and that the trial

judge's denial of the defendant's request for a hearing on his 35(c) motion is not supported by the evidence.

I do not believe that it is necessary to reach the question of the constitutionality of section 16–5–402(3). The trial judge denied Thomas' Rule 35(c) claim on alternative grounds, one of which was based on the application of the statute. The other ground was based on conclusions the district court reached after it followed a well-established approach considering the merits of the Rule 35(c) motion. Because I believe that the district court correctly decided the issue on the second alternative ground, and because I believe the majority fails to enunciate a legal standard to evaluate the district court's actions, I dissent.

### I.

The district court denied Thomas' Rule 35(c) motion without a hearing on *two* grounds: that section 16–5–402(3) prohibited consideration of the motion, and that Thomas' motion was without merit. The majority summarily dismisses the district court's holding that Thomas' motion for postconviction relief was without merit. The district court held that the failure of Thomas' trial attorney to move to exclude the prior conviction constituted a strategic decision. The majority disagrees, deciding that the record does not support this conclusion. Maj. op. at 887. The majority's cursory review of Thomas' assertions and its conclusory resolution that Thomas is entitled to a hearing is not convincing.

Under Crim.P. 35(c)(3), a trial court is not required to hold a hearing on a motion for postconviction relief if the motion, files, and record of the case "clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant

---

2. The defendant's earlier conviction was set aside and a new trial ordered four years after Thomas was convicted of the crimes that are the subject of this Crim.P. 35(c) motion. *People v. Thomas,* No. 86CA1007 (Colo.App.1989) (not selected for official publication). The district attorney elected not to retry the case involving the earlier conviction.

3. In its amicus brief, the Colorado State Public Defender raises the issue of how a lawyer who is both trial and appellate counsel for an individual can reasonably raise the issue of his own ineffectiveness on appeal. In my view, this is best addressed under the rubric of whether the ineffective assistance of counsel claim was *reasonably available* on appeal. The amicus' concern, however, does not affect this case because Thomas had different counsel at trial and on appeal.

postconviction relief." *White v. District Court*, 766 P.2d 632, 634 (Colo.1988) (quoting *People v. Trujillo*, 190 Colo. 497, 499, 549 P.2d 1312, 1313 (1976)).

After concluding in two pages that section 16–5–402(3) barred Thomas' postconviction relief, the district court, ruling on the second, alternative ground, went on to devote eight pages of its twelve-page, single-spaced ruling to the merits of Thomas' 35(c) claims. After citing the applicable law, the district court noted that Thomas relied primarily on *Cummings v. People*, 785 P.2d 920 (Colo.1990), to support his ineffective assistance of counsel claim. The issue in *Cummings* was whether the trial counsel's erroneous decision to collaterally attack the prior conviction at the close of the prosecution's case rather than before the trial began constituted ineffective assistance of counsel. We remanded that case to the trial court for further evaluation because the record was incomplete.

In denying Thomas' motion, the district court reasoned that Thomas' reliance on *Cummings* was misplaced because that case raised a different issue, i.e., when to attack the prior conviction, in contrast to a decision not to attack the prior conviction at all. The district court concluded that the decision of Thomas' attorney not to attack the conviction was a strategic decision, within the exclusive province of the lawyer. The district court ruled that

> it is clear that trial counsel was aware of the infirmities in the prior conviction. With this knowledge and after discussing it with the defendant, counsel made the strategical decision not to collaterally attack the defendant's prior conviction.... [T]he defendant's disagreement as to whether counsel made the appropriate strategical decision does not constitute ineffective assistance of counsel.

The district court also relied on *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for its decision that Thomas' claims did not have merit. Under *Strickland*, a defendant making an ineffective assistance of counsel claim must not only show that counsel's performance fell below an objective standard of reasonableness, but also that, "but for counsel's unprofessional errors, the result of the proceeding would have been different," that is, the defendant would have been found not guilty. *Id.* at 694, 104 S.Ct. at 2068. In denying Thomas' motion, the trial judge concluded that, even if the prior conviction had been attacked and suppressed and Thomas had testified, he still would have been convicted.

The majority concludes that Thomas is entitled to an evidentiary hearing because Thomas asserts that he can prove that "his attorney's failure to move to suppress the prior conviction was below the requisite standard of care of a criminal attorney" in the community." Maj. op. at 888. However, the majority never mentions, much less applies, the second part of the *Strickland* test, that is, whether Thomas can show that, but for his attorney's alleged error, he would have been found not guilty. The district court's ruling on the motion concluded, and I agree, that Thomas cannot show that the trial court would have prohibited the prosecution's use of his prior conviction for sexual assault on a child and that the verdict would have been different had he testified.

II.

The majority does not enunciate a legal standard for reviewing the district court's decision that Thomas' Rule 35(c) motion was without merit and thus not deserving of a hearing. The majority does not explicitly cite the legal standard it applies. Instead, the opinion states: "In view of Thomas' averments and the totality of the circumstances surrounding both criminal proceedings, we conclude that the record does not support such conclusion." Maj. op. at 887.

We have never explicitly enunciated the standard by which we will review a district court's decision on a defendant's Rule 35(c) motion. However, jurisdictions that have explicitly decided the standard of review for post-conviction relief resembling Rule 35(c) have chosen to employ a standard that does not disturb a district court's ruling unless there was an abuse of discretion or unless the ruling was clearly erroneous. *See, e.g., Shockley v. State*, 565 A.2d 1373, 1377 (Del. 1989) ("[I]n reviewing a denial of [ineffective

892

assistance of counsel claim], our standard of review is abuse of discretion."); *State v. Moss,* 240 Neb. 21, 480 N.W.2d 198, 202 (1992) (In ruling on an ineffective assistance of counsel claim, "the trial court's findings will be upheld unless such findings are clearly erroneous."); *Wolfe v. State,* 117 Idaho 645, 791 P.2d 26, 28 (App.1990) (In post-conviction relief proceedings, "[a] finding by the trial court that the applicant has not met his burden of proof is entitled to great weight and will not be disturbed on appeal unless it is clearly erroneous."); *Pelton v. State,* 831 S.W.2d 651, 653 (Mo.App.1992) ("[T]he standard of review of a denial of [post-conviction relief] is limited to a determination of whether the findings and conclusions of the hearing court are clearly erroneous."); *Halverson v. State,* 372 N.W.2d 463, 467 (S.D.1985) ("Our standard of review in [ineffective assistance of counsel cases] is to hold that the findings of fact, conclusions of law, and order of the court hearing the petition are dispositive unless clearly erroneous.").

The district court in this case devoted most of its twelve-page, single-spaced opinion to the merits of Thomas' 35(c) claims. The court's analysis of each of Thomas' contentions is thorough and well reasoned. As it makes conclusions of fact and law, the court cites the appropriate case law and convincingly applies the law to the facts of the case. The district court's application of the test of *Strickland* to the ineffective assistance of counsel claim is accurate, and its conclusions are supported by the record.

I believe the district court, in its application of *Strickland* and other case law to the merits of the case, appropriately denied Thomas' Rule 35(c) motion. By no interpretation could one conclude that the court abused its discretion or issued a ruling that was clearly erroneous.

### III.

I conclude that the district court acted appropriately in denying Thomas' Rule 35(c) motion on the merits, making it unnecessary for this court to reach the question of the constitutionality of section 16–5–402(3). I dissent.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.